I ¿PETTIGREW, J.
This litigation stems from a dispute between a realtor and a landowner concerning a commercial lease agreement that contained an option to purchase. The landowner has appealed from a judgment in favor of the realtor.
Clyde J. Johnson (“Mr. Johnson”), defendant herein, together with his sons, Kenneth Ray Johnson and Clyde Ricky Johnson (collectively “the Johnsons”), were the owners of a certain parcel of commercial property situated along Florida Boulevard in Denham Springs, Louisiana, that had formerly been occupied by an automobile dealership. Mr. Johnson contacted J.L. Shilling, a real estate agent with plaintiff, M.A. Allen, Inc. (“M.A. Allen”), to assist him in the sale of this property. A Listing and Marketing Agreement was signed by Mr. Johnson and Mr. Shilling and dated December 2, 1998. This agreement was valid through March 2, 1999. Mr. Johnson and Mr. Shilling subsequently executed a Greater Baton Rouge Association of Realtors Multiple Listing Change Form and authorized an extension of this listing through June 29,1999.
During this period, negotiations took place between M.A. Allen, Mr. Johnson, and Kenworth of Jackson, Inc. (“Ken-worth”) that led to an Agreement to Purchase and Sell Commercial Property (“the Agreement”) dated January 29, 1999. The Agreement provided in pertinent part:
In the event of default by either party, the non-defaulting party shall have the right to demand, and sue for specific performance and/or damages and be awarded the deposit. The defaulting party under this agreement shall also be liable for the REALTOR fees and all attorney fees and other costs incurred in the enforcement of any and all rights under this agreement.
*748 Though the Agreement set forth a flat real estate commission of $20,160.00, both sides testified at trial that it was subsequently-agreed that Mr. Johnson would pay a reduced commission of six (6%) percent of the annual rental each year. The Agreement further provided that in the event the option to purchase was exercised, M.A. Allen would receive an eight (8%) percent commission on the sale.
|SA lease between the Johnsons and Kenworth was later executed and became effective on July 1, 1999.[1] The lease agreement between the Johnsons and Ken-worth specified a primary lease term of three years from July 1, 1999 through June 30, 2002, with escalating rents each year and options thereafter to extend the lease term or purchase the property. The lease agreement also provided in pertinent part:
If the Improvements on the demised premises are substantially damaged or destroyed in any fire ... then [the John-sons are] to rebuild the Improvements, and rent will be abated until the building is ready for occupancy .... Insurance proceeds to rebuild or repair such loss shall be payable to [the Johnsons] and shall constitute the maximum amount [the Johnsons are] obligated to expend for re-building.
The lease agreement further required that Kenworth obtain fire insurance coverage for ninety (90%) percent of the replacement value of the building, but not less than $500,000.00. Kenworth was further obligated to have the Johnsons named as additional insureds under the policy. In furtherance of these obligations, Kenworth insured the building for $1,200,000.00.[2]
Upon the signing of the lease in July 1999, Mr. Johnson paid an advance commission to M.A. Allen on the first year’s rental. On the anniversary date of the lease, Mr. Johnson paid the next year’s commission in advance. These rental commission payments totaled $9,360.00.
Three months into the second year of the lease, on September 28, 2000, the leased property was destroyed by fire. Kenworth ceased further rental payments following the destruction of the premises.
The Johnsons did not attempt to repair the building, but sought to recover from Kenworth the fire insurance proceeds of $1,200,000.00. The Johnsons later filed suit for breach of contract against Ken-worth in Livingston Parish[3] seeking to collect the insurance proceeds, plus attorney fees, legal interest, and costs. The Johnsons and Kenworth ^subsequently reached a compromise wherein the John-sons received $1,112,500.00 for the leased premises and burned-out building in its existing state.
On April 25, 2001, M.A. Allen instituted the instant suit against Mr. Johnson claiming breach of contract. M.A. Allen claims that it worked with Mr. Johnson to lease, and later sell the property, and that it is entitled to its agreed upon commission.[4] *749 On October 17, 2001, Mr. Johnson filed a motion for summary judgment claiming that the payment of rent, together with the option to purchase, ceased on September 28, 2000, when the leased premises were totally destroyed. Additionally, Mr. Johnson claimed that no commission was earned on rental payments that were not made, or on an option to purchase that was never exercised. Mr. Johnson further claimed that no commission was owed as a result of its settlement and compromise with Kenworth.
Mr. Johnson and M.A. Allen filed cross motions seeking summary judgment, and following a hearing on December 3, 2001, both motions for summary judgment were denied by the trial court.
This matter was ultimately tried on July 17, 2002, and the parties were thereafter instructed to file Post Trial Memorandums. On January 6, 2003, the trial court issued its Reasons for Judgment setting forth its finding in favor of M.A. Allen and against Mr. Johnson. Mr. Johnson was ordered to pay M.A. Allen $106,800.00 “representing the real estate commission due on the balance of the rental payments together with the sales price for the leased premises.... ” Mr. Johnson was further ordered to pay legal interest from the date of judicial demand, attorney fees of $5,000.00, and all costs. On January 31, 2003, the trial court signed a Judgment consistent with its Reasons for Judgment. From this judgment, Mr. Johnson has appealed.
ASSIGNMENTS OF ERROR
In connection with his appeal in this matter, Mr. Johnson has set forth the following issues for review by this court:
Isl. Whether the trial court erred in finding the existence of a purchase agreement;
2. Whether the trial court erred in awarding commissions on “rental payments” and the “sales price of the leased premises” where a suspensive condition existed that was not met with the result being that no obligation was created;
3. To the extent the contract was ambiguous, if at all, whether the trial court erred in failing to construe such ambiguity against the creator of the contract, M.A. Allen; and
4. Whether the trial court erred in awarding attorney fees for breach of a contract where there was no breach and where breach of a contract was not asserted by M.A. Allen.
STANDARD OF REVIEW
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). When the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and enter judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989).
DISCUSSION

Existence of a Purchase Agreement

The Initial issue raised by Mr. Johnson is whether the trial court erred in finding the existence of a purchase agreement. Mr. Johnson argues that the option to purchase contemplated not only that rental payments had been made for the *750 preceding three-year lease term, but also that the leased premises would be in existence at the exercise of the option. Mr. Johnson further argues that although the original lease contained an option to purchase that would have entitled M.A. Allen to a commission, said option was never exercised. It is the position of Mr. Johnson that the destruction of the leased premises by fire was an intervening or superceding cause that terminated the lease agreement and the option to purchase. Accordingly, Mr. Johnson contends that no commissions (for ^rental of the property or exercise of the option) were earned by M.A. Allen following the fire on September 28, 2000.
M.A. Allen responds with the argument that Mr. Johnson entered into the Agreement with M.A. Allen that stipulated Mr. Johnson would pay M.A. Allen a commission of eight (8%) percent of the purchase price in the event Kenworth elected to purchase the property. If Mr. Johnson’s intent had been merely to lease the property, he would not have included an option to purchase as part of the lease agreement. Furthermore, M.A. Allen argues, Mr. Johnson would have used the requisite insurance proceeds to rebuild the premises rather than executing a cash sale. M.A. Allen asserts that following the destruction of the premises by fire, both parties received a windfall by agreeing to an early termination of the lease.
In its Reasons For Judgment, the trial court found that “[a] compromise was reached. The compromise transaction between [Mr. Johnson] and Kenworth basically provided that [Mr. Johnson] received $1,112,500.00 (insurance proceeds) and the property was transferred to Kenworth.”
Upon review, we note that the Agreement that is the basis of this litigation addresses the lease and possible sale of the property not merely the improvements situated thereon. In accordance with the terms of the subsequent lease, the rent was abated due to the fire and the destruction of the improvements on the property. Thus, Kenworth had no obligation to tender further rental payments until the Johnsons rebuilt the building with the proceeds of the insurance Kenworth was required to maintain. There being no evidence to indicate that the Johnsons elected to terminate the lease through written notice to Kenworth, the lease presumably remained in effect. Instead of rebuilding the building with the insurance proceeds, it appears that the parties, by mutual agreement, chose to accelerate the time frame within which Kenworth could exercise its option and purchase the property. Consequently, the Johnsons and Kenworth, through execution of an escrow agreement and private act of sale, reached a compromise with respect to the purchase price of the property in its present condition. The compromise agreement flowed from the option to purchase that was contained in the original lease.
|7In its reasons for judgment, the trial court referred to the Agreement between Mr. Johnson and M.A. Allen as a purchase agreement when the Agreement was in actuality an agreement to lease with an option to purchase. This misnomer was nothing more than harmless error in view of the fact that Kenworth ultimately purchased the property. This assignment of error is without merit.

Existence of a Suspensive Condition

The second issue raised by Mr. Johnson is whether the trial court erred in awarding commissions on “rental payments” and the “sales price of the leased premises” if there was a failure to meet a suspensive condition.
*751 With respect to rental commissions, Mr. Johnson states that it is undisputed that he paid an advance commission of six percent on the first year’s lease of $72,000.00. Mr. Johnson further states that his advance payment of six percent on the second year’s lease of $84,000.00 is similarly undisputed. It is further undisputed that the building on the property was totally destroyed by fire three months into the second year of the lease and that further rental payments by Kenworth ceased.
Mr. Johnson claims that the parties agreed to negotiate rental commissions each year; however, due to the fire, the commission on the third year’s rent was not negotiated and no rent was ever paid. Mr. Johnson argues that the trial court erred in ordering him to pay a rental commission on rent that was never paid at a rate that was never negotiated.
M.A. Allen responds with the assertion that pursuant to the terms of the lease, Mr. Johnson was required to rebuild the improvements on the premises in the event of a fire. While M.A. Allen recognizes that rent was to be abated until the building was ready for occupancy, M.A. Allen argues that thereafter, Mr. Johnson would be entitled to rent for the remainder of the lease period, and it would have been entitled to a commission on the rent paid.
We find that this argument by M.A. Allen ignores the fact that if Mr. Johnson had elected to rebuild the premises there was no guarantee that Kenworth would have exercised its option to purchase the property at the conclusion of the lease. Hence, M.A. |sAllen was not assured of receiving a commission on both the rent and the sale of the property.
As we have noted, the Johnsons and Kenworth reached a compromise with respect to the purchase price of the property in its existing condition. Under the terms of the Agreement, at the trial of this matter, both parties testified that the agreed upon commission in the event of a sale was eight (8%) percent. Thus, M.A. Allen is entitled to a sales commission of eight (8%) percent of the sales price of $1,112,500.00, or $89,000.00.
The trial court ordered Mr: Johnson to pay M.A. Allen the “sum of $106,800.00 representing the real estate commission due on the balance of the rental payments together with the sales price for the leased premises.” We find that because rent for the property was abated following the fire, no rent was received, and no commission was- due.[5]
Accordingly, we affirm the trial court’s award of $89,000.00 representing the agreed upon commission of eight (8%) percent of the $1,112,500.00 sales price of the property, but reverse with respect to any amounts that the trial court awarded for additional commissions on rental payments that were never received.

Ambiguity of Contract

The third issue raised by Mr. Johnson asserts that to the extent the contract was ambiguous, the trial court erred in failing to construe such ambiguity against the creator of the contract, M.A. Allen. In support of this proposition, Mr. Johnson urges application of La. Civ.Code article 2056 that provides:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
*752 A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
In response, M.A. Allen cites La. Civ. Code article 2046 that provides:
|9When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.
M.A. Allen argues that all of the parties involved in the transaction were aware of their contractual obligations concerning the lease and purchase of the property.
We agree that the Agreement between Mr. Johnson and M.A. Allen clearly reflects that in the event the option to purchase was exercised, an eight (8%) percent commission would be paid to M.A. Allen. This assignment is without merit.

Award of Attorney Fees

The final issue raised by Mr. Johnson concerns the trial court’s award of attorney fees for a contract that Mr. Johnson claims was not breached. Mr. Johnson concedes that the Agreement provides that in the event of a default, the defaulting party will be liable for all attorney fees incurred in the enforcement of any and all rights under the agreement. Nevertheless, Mr. Johnson contends that the contract was not breached, and further, that when he and Kenworth subsequently entered into an actual lease, the Agreement became a “dead contract.”
M.A. Allen responds with the assertion that Mr. Johnson defaulted on his obligation to pay a commission for the third year of the lease and on the sale of the property. M.A. Allen argues that the contract provides for attorney fees, therefore, Mr. Johnson is liable in the event he defaults.
We agree. The agreement clearly provides that M.A. Allen is entitled to an eight (8%) percent commission if the property is sold, and that the defaulting party is responsible for attorney fees in the event of a default. We affirm the trial court’s award of $5,000.00 in attorney fees. This assignment of error is without merit.
CONCLUSION
For the above and foregoing reasons, that portion of the trial court’s judgment awarding M.A. Allen the sum of $89,000.00 representing the agreed upon eight (8%) percent commission on the sale of the property for $1,112,500.00 is hereby affirmed. In addition, the trial court’s award of $5,000.00 to M.A. Allen as attorney fees is also affirmed.
[inThe trial court’s judgment is reversed in part with respect to M.A. Allen’s claim for real estate commissions following the fire.
All costs associated with this appeal shall be assessed equally against Mr. Johnson and M.A. Allen.
REVERSED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.
DOWNING, J., concurs.

. The parties executed the lease on June 15, 1999.

. One million, two hundred thousand and no/ 100s ($1,200,000.00) dollars cash was the price for the property that was set forth in the option contained in the lease agreement.

. Clyde J. Johnson, et al. v. Kenworth of Jackson, Inc., 90,952, Division ''D'', 21st Judicial District Court, Livingston Parish, Louisiana.

.In its petition, M.A. Allen claimed that it was owed a balance of $10,800.00 on the $20,160.00 rental commission set forth in the Agreement, together with $96,000.00 representing an 8% real estate commission on the original $1,200,000.00 purchase price for the property as set forth in the option.

. The record reflects that while Mr. Johnson paid a lease commission on the entire second year in advance, the building was destroyed in the third month of the second year. Therefore, Mr. Johnson could have raised the issue of said overpayment as an affirmative defense pursuant to La.Code Civ. P. article 1005.